GULF, COLORADO & SANTA FE RAILWAY Co. v. MRS. S. M. FINLEY.

No. 812.

1. **Charge of Court—Assuming Fact.**

It is error for the court in its charge to assume any material fact as established about which there is a controversy in the evidence, however strong the evidence may be on the one side and however weak on the other.

2. **Same—Negligence—Weight of Evidence.**

A charge to the jury that if they should find "that F.'s injuries were caused by the negligence of the conductor of the train in ordering F. to take the engine and

couple it to the train, . . . then the defendant company would be liable, unless," etc., is erroneous as on the weight of the evidence, in impliedly construing the act of the conductor to be negligence.

### 3. Railway Company—Rules for Employes.

It is the duty of a railway company to establish and enforce rules reasonably sufficient for the protection of its employes; but whether or not such rules have been established, and are reasonably stringent for the purpose, are questions for the jury.

### 4. Damages—Action for Injuries Resulting in Death—Measure of Recovery.

In an action against a railway company for injuries resulting in the death of a husband and father, the wife cannot recover for being deprived of the solace, comfort, and affection of the husband, nor the children for the deprivation of his moral and intellectual nurture, since the statute confines a recovery in such cases to the actual pecuniary damages sustained.

### 5. Same—Evidence of Dying Exclamation—Res Gestae.

In such an action a dying exclamation of the deceased, such as "Oh, my poor wife and babies!" not tending to show the cause or manner of death, is not admissible in evidence.

### 6. Charge of Court—Contributory Negligence—Burden of Proof.

The burden of proof is upon the defendant to show contributory negligence, and if there was error in a charge of the court, that plaintiffs must show that the death of the deceased "was not the result of his own contributory negligence, but the burden of showing that his death was the result of his own contributory negligence rests upon the defendant company pleading the same," it was not against the defendant.

### 7. Briefs—Improper Language—Personalities.

See the opinion for the use of language by counsel in their briefs and argument, with reference to each other, held by the court to be reprehensible and in violation of the rules.

Appeal from Dallas. Tried below before Hon. R. E. Burke.

*Alexander, Clark & Hall* and *J. W. Terry,* for appellant.—1. The court erred in overruling defendant's third special exception to the allegation contained in the fourth paragraph of plaintiff's petition, to the effect that defendant was negligent in failing to provide and enforce adequate, suitable, and safe rules and regulations for the control of its employes in the Dallas yard, for the reason that defendant was not chargeable with such diligence, but was only chargeable with ordinary care, and the deceased assumed the risk attendant upon the service, if any, resulting from the lack of defined rules and regulations. Receivers v. Moore (Texas), 22 S. W. Rep., 275; Ry. Co. v. Schwabbe (Texas), 21 S. W. Rep., 706; Railway v. Nix (Texas), 23 S. W. Rep., 329; Railway v. Bell, 75 Texas, 51; Railway v. Wells, 81 Texas, 686.

2. The court erred in instructing the jury that the burden of showing the death of Finley was the result of his own contributory negligence rests upon the defendant pleading same, for the reason that the burden of proof on this question was upon plaintiff, and never shifted. Railway v. Crowder, 76 Texas, 499; Railway v. Crowder, 63 Texas, 503; Wood's Master and Servant, sec. 382.

3. It was reversible error for the court to assume as proven the material controverted facts, and the error is appalling when the court assumes a material issue raised by the pleading as established contrary

Vol. XI. Civil—5

to all of the evidence. Campbell v. Ellsworth, 20 S. W. Rep. (Texas), 120; Railway v. Nixon, 52 Texas, 26; Heldt v. Webster, 60 Texas, 207.

*Wooten & Kimbrough, T. T. Vanderhoeven* and *Charles F. Clint,* for appellees.—1. The portion of the court's charge on the duty of appellant "to provide and enforce reasonable and suitable rules and regulations for the government of its employes and the conduct and management of its business in said yards," was a charge on one of the main issues in the case, was a correct statement of the law on the subject as applicable to the facts of this case, and there was no such fundamental error in it as to authorize this court to notice the error complained of, in absence of a more specific charge having been asked by appellant and refused by the trial court. Railway v. Gay, 86 Texas, 609, and authorities cited; Railway v. Echols, 27 S. W. Rep., 61; Rutledge v. Railway (Mo.), 24 S. W. Rep., 1053; Railway v. Aylward, 79 Texas, 677; Railway v. McMahan, 26 S. W. Rep., 159; Railway v. Winton, 26 S. W. Rep., 770; Railway v. Wylie, 26 S. W. Rep., 85; Railway v. Hudman, 28 S. W. Rep., 390.

2. There was no error in the charge of the court. The court, for the purposes of presenting the issues made by the pleadings and evidence, correctly assumed as proven certain facts upon which there was no material dispute among the witnesses; one of which was that the "proof showed that the train conductor directed Finley and another of said train crew to get the engine from the round house and go back to the yards, couple the same to the train and bring it down to what is known as the junction." Wintz v. Morrison, 17 Texas, 372; Railway v. Stewart, 57 Texas, 166; Railway v. Pierce, 25 S. W. Rep., 1053.

3. That the wife and minor children are entitled to have the jury consider the deprivation of the aid, solace, comfort, advice and nurture of the dead husband and father, is sustained by the great weight of the most respectable text-writers and courts of this country and England, even under the statutory limit of recovery to the pecuniary value of the life of the deceased. 2 Sedgw. on Damages, sec. 577; 3 Sutherland on Damages, 279-290, and cases cited in notes.

4. The declaration of the deceased immediately on being hurt was res gestae and admissible, and the remarks objected to were not elicited by any improper question, the interrogatory being directed to finding out if Finley said anything that would throw light on how he came to be injured. Tel. Co. v. Clark, 25 S. W. Rep., 990; Johnson v. Stratton, 25 S. W. Rep., 683; Evans v. Martin, 25 S. W. Rep., 688; 82 Texas, 516; 84 Texas, 156.

LIGHTFOOT, CHIEF JUSTICE.—This suit was brought by appellee, Mrs. Frances M. Finley, for herself and children, for damages for the death of her husband, who was a brakeman on the road of the defendant company, such death claimed to have been caused by the negligence of appellant, in its yards in East Dallas. It is alleged that deceased was a member of the train crew which brought the train into the yards, where

it was turned over to the yard crew, an entirely distinct department of service, while the train crew went to get supper and to receive orders; that it was the business of the yard crew to do such switching as had to be done, and when they had finished, to notify the conductor of the train crew, or to leave the train standing at or near where it had been left, and that it was customary for the train crew to assume that the yard crew was through with switching when the train was thus left standing still near the point where it was first left on being brought into the yard; that on this occasion the train crew got supper, and more than an hour had elapsed, being more than sufficient time for the yard crew to finish their work, when the conductor of the train crew, who was deceased's superior officer, ordered him to take the engine and couple it to the train; that deceased went in obedience to orders and found the train standing still at the point where it had been stopped on first entering the yard, and apparently no further switching in progress and no sign of the yard crew there; that he attempted to couple the engine to the front car, and as was proper, and owing to a defective and unsuitable coupling pin and link, had to go in between the car and engine, and while in this position the yard crew, without warning, ran the switch engine against the other end of the train and killed the deceased.    It was alleged that the coupling apparatus was unsafe and dangerous, and the pin "stuck;" that the conductor was negligent in sending deceased to make the coupling without using reasonable care to know that the train was ready; that the yard crew was negligent in leaving the train apparently made up and standing as if ready for the coupling of the engine, and in running the switch engine into the hind-end of the train without warning and without care to see that no one was at the other end; and it was further alleged that the accident was also caused by the want of suitable and adequate rules to govern the movements of the yard crew in its relations to the train crew, and in regulating such work in the yards.

After general and special demurrers and general answers, appellant plead contributory negligence; that the injury was the act of fellow servants, etc.    There was a verdict and judgment for plaintiff for $12,000, from which this appeal is taken.

The seventh assignment of error is as follows:    "The court erred in its charge; in this, that undertaking, as the court did, to instruct the jury upon the undisputed facts, it perverted the testimony of the conductor, who testified that he ordered Finley to 'get the train when it was ready;' the court stating in its findings as to the evidence that the conductor directed Finley to go back to the yard with the engine, couple the same to the train and bring it down to what is known as the junction.  *  *  * It was to the prejudice of defendant for the court to assume as proven the direction from the conductor to go and get the train, etc.; whereas the evidence was that he directed them to get the train when 'it was ready.' "

There was a conflict in the evidence upon this point.    It was shown that Finley was head brakeman of the train crew; that the train had been

pulled into the East Dallas yards and left by the train crew, while.they took the engine and went down the track some distance for supper; that it was the duty of the yard crew to take charge of the train and do such switching as might be necessary. After supper the conductor of the train gave the order to Finley, as head brakeman, under which he went back with the engine, accompanied by the engineer and another brakeman, and while endeavoring to couple the engine to the train Finley was killed. Some of the witnesses testified to the positive order from the conductor to Finley to go back to the yard with the engine, couple the same to the train and bring it down to the junction; while the conductor testified that he gave the order for him to get the train when it was ready. It was error for the court in its charge to assume any material fact as established, about which there was a controversy in the evidence. However strong the evidence may have been on the one side,. and however weak on the other, the issue was for the jury to determine. In view of the issues as made up, such assumption may have influenced the jury in their verdict.

2.   In its ninth assignment of error appellant complains of the following charge of the court to the jury: "You are told that under the evidence before you, the conductor of this train and Finley were not fellow servants, and if you find that Finley's injuries were caused by the negligence of the conductor of the regular train, in ordering Finley to take the engine and couple it to the train and bring it down to the junction, then the defendant company would be liable, unless you ·find, from the evidence, that Finley's own negligence at the time contributed to the injury."

Appellant objects to this charge, "because it is upon the weight of the evidence in expressly construing such assumed fact to be negligence." This objection, taken in connection with the assignment above considered, presents a serious question. In the first place, the court charged the jury, as a fact, that the conductor did order Finley to take the engine and couple it to the train and bring it down .to the junction; in the second place, it charged the jury, that if Finley's injuries were caused by the negligence of the conductor in giving such order, then the defendant would be liable unless the injury was caused by Finley's contributory negligence. The charge does not in express terms construe the act of the conductor to be negligence, but it refers to such act of the conductor as negligence in such terms as were likely to mislead the jury. The jury are told, that "if you find that Finley's injuries were caused by the negligence of the conductor of the regular train, in ordering Finley to take the engine," etc. The question as to whether it was an act of negligence for the conductor to give such order, should have been clearly submitted to the jury for their determination, under all the facts and circumstances of the case.

3.   Under appellant's tenth assignment of error complaint is made of the following charge of the court below: "It was the duty of the

defendant company to provide and enforce in its East Dallas yards reasonable and suitable rules and regulations for the government of its employes, and the conduct and management of its business in said yards; and if from the evidence you find and believe that the defendant company failed to do this, and as a result of such failure the deceased was injured, then the defendant company would be liable, unless you find and believe that Finley's own negligence contributed to the acci-dent."

The question of the adoption of reasonable rules and regulations by parties engaged in a complex business is fully discussed by Judge Brown in the case of Railway v. Echols, 87 Texas, 339 (27 S. W. Rep., 61), as follows: "Whether or not the evidence is sufficient to show a case in which the duty to make rules rested upon defendant is a question of law for the court. If the facts raised that issue, it should have been sub-mitted to the jury; otherwise it should not. When submitted to the jury, the reasonableness of such regulations is a question for the jury. The rule of law as to when it becomes the duty of the master to make rules for the safety of employes is well stated by Mr. Wood in his work on Master and Servant, thus: 'If a master is engaged in a complex busi-ness, that requires definite regulations for the safety and protection of his employes, a failure to adopt proper rules, as well as laxity in their enforce-ment, is negligence per se, and the establishment of defective or im-perfect rules is such negligence as renders the master responsible for all injuries resulting therefrom.' Wood, Mast. and Serv., sec. 403; 3 Wood Ry. Law, sec. 382. This rule is quoted and approved in Reagan v. Rail-way Co., 93 Mo., 348; and in Morgan v. Iron Co. (N. Y. App.), 31 N. E. Rep., 234. This question has been before this court in the following cases: Railroad Co. v. Watts, 63 Texas, 552; Railroad Co. v. Smith, 76 Texas, 618; and Railroad Co. v. Hall, 78 Texas, 658. In the first case this court said: 'Where the employe is engaged in a dangerous service, it is the duty of the master to use all reasonable and necessary means to pro-tect him against any superadded danger that might be reasonably expect-ed to arise from extrinsic causes; * * * for, having placed its servants at labor upon these repair tracks, it was incumbent upon the company to use due care in protecting them against danger arising from these ex-trinsic causes.' In the other cases the court followed Railroad Co. v. Watts. It will be seen that the rule laid down is substantially the same as quoted from Wood on Master and Servant. In Railroad Co. v. Watts, 63 Texas, 552, the injured party was engaged in repairing cars, when the engine backed down against the car at which he was employed, injur-ing him. Railroad Co. v. Hall was a similar case; and in Railroad Co. v. Smith, the plaintiff was on a train, on the road, and, for want of orders, the train collided with another train, whereby he was injured. In each of these cases the servants were engaged in hazardous employments, in which they were exposed to dangers arising from the acts of other em-ployes, by which they were liable to injury, unless some system were adopted by which such employes would be warned of the approach of

danger. In Abel v. President, etc., 103 N. Y., 581; Sheehan v. Railroad Co., 91 N. Y., 332; Railroad Co. v. Lavalley, 36 Ohio St., 221; Reagan v. Railroad Co., 93 Mo., 348 (quoted above); Morgan v. Iron Co. (N. Y. App.), 31 N. E. Rep., 234; and Corcoran v. Railroad Co., 126 N. Y., 673, the facts showed that the business in which the servants were engaged was of a hazardous nature. In all of these cases the same doctrine is announced."

In the case of Railway v. Hall, 78 Texas, 659 and 660, Judge Henry sets out in his opinion the full charge of the court upon the subject, which is approved by the Supreme Court.

While the charge in this case is not so full as it might have been, yet we cannot say that it was erroneous, and if appellant desired the degree of care more explicitly stated, a special charge should have been asked upon the subject. The testimony in regard to the rules was not free from conflict. It was clearly the duty of the railway company to have established rules and regulations reasonably sufficient to afford protection to its employes engaged in its business; and it was a question of fact to be fairly submitted to the jury whether or not such rules and regulations had been established. The case of Railway v. Watts, 63 Texas, 552, was, on this question, somewhat similar to the case before us. In that case the appellee was a workman engaged in repairing a car on a side track. An engine run a broken car upon the side track, striking the car upon which appellee was at work, and injuring him. The court said: "The real issue is as to whether or not the means provided by the company for protecting its employes engaged in repairing cars upon the repair tracks against danger arising from extrinsic causes, such as the use of these tracks in operating engines, were reasonably sufficient to afford the protection. For having placed its servants at labor upon these repair tracks, it was incumbent upon the company to use due care in protecting them against danger arising from these extrinsic causes. If the jury should determine from the evidence that the degree of care used by appellant in this regard was reasonably sufficient, then no recovery could be had against it for injury. But if the jury should find from the evidence that the degree of care used was not reasonably sufficient, then the company would be liable for the damages resulting from the injury."

4. The thirteenth assignment of error is as follows: "Thirteenth— The court erred in overruling defendant's eighth special exception to the allegation that the wife had been deprived of the solace, comfort, and protection and affection of her husband, and to the effect that the three minor children had been robbed of that moral and intellectual nurture that would have been bestowed upon them, together with his constant affection; the ground of the exception being that said allegations were irrelevant and improper and made with the view of being read to the jury and prejudicing their minds in behalf of plaintiffs."

The statute confines a recovery in such cases to actual damages. In the case of Railway v. Cowser, 57 Texas, 303, the court fully considers the character of damages which may be recovered, confines the claimant

to the pecuniary injury sustained, and lays down rules by which such pecuniary injury may be estimated. The court says: "Under the ruling of the court in this case the plaintiffs were confined to the actual damages sustained.

"The measure of actual damages in such cases, as said in March v. Walker, 48 Texas, 375, is the pecuniary injury sustained, and is not the same as when the party who is himself injured sues and recovers compensation for physical and mental suffering. It has been almost universally held that the principle under which such damages are to be assessed, under similar statutes, is that of pecuniary injury and not as a solatium. 2 Thomp. on Neg., 1289, sec. 30; Pierce on Railroads, 393."

The special exceptions should have been sustained to all allegations not coming within the rule. Solace, comfort, protection, affection, moral and intellectual nurture, should have all been excluded. But we object to the last portion of appellant's assignment, that such allegations were "made with the view of being read to the jury and prejudicing their minds in behalf of plaintiffs." It is always sufficient to present clearly the point relied upon, and an assignment should not be used by counsel as a weapon for thrusts of this character.

5.  The sixteenth assignment of error is as follows: "The court erred in admitting, over objection of defendant, as shown by its bills of exception, the dying declarations of the deceased, 'Oh, my poor wife and babies!' because the same were irrelevant, and calculated to excite the sympathy of the jury."

Mayfield, the engineer of the train crew, testified that after the deceased was injured, he said: "That link went clear through me; I am killed." Right after he said this, he said: "Oh, my God! My poor wife and children, if I could see them before I die!" And that this was all he remembered his saying.

T. D. Clark, the other brakeman of the train crew, testified that after Finley was injured, he exclaimed: "Oh, my poor wife and babies!" He also said, "Tom, I am killed." Any words or exclamations of the deceased at the time he was killed, tending to throw light on the transaction, or to show how he was killed, was a part of the res gestae, and as such admissible in evidence; but the exclamation, "Oh, my poor wife and babies!" while extremely touching, as his last words, yet do not relate in any way to the manner of his death or tend to throw light upon the transaction, and were not admissible in evidence. For a full discussion of the question, see the opinion of Judge Gaines in Railway v. Anderson, 82 Texas, 519. But in this connection, see also Railway v. Crowder, 70 Texas, 226, and authorities there cited.

The words above were properly objected to and bills of exceptions reserved. There can be no doubt that such objections should have been sustained.

6.  In its seventeenth assignment appellant objects to the following charge of the court: "The law imposes the duty and burden on the plaintiff to make out her case and show her right to a recovery in this

case by a preponderance of the evidence; and if she has failed to do this, then no recovery can be had. That is, she must show that the death of Finley was not the result of his own contributory negligence; but the burden of showing that his death was the result of his own contributory negligence rests upon the defendant company pleading the same."

This charge is not as clear as it might have been made, but the whole taken together substantially conveys the idea to the jury that it was the duty of the plaintiff not only to show the negligence of the defendant, but that the deceased was in the exercise of due care at the time of the injury, under the rule laid down in the Crowder case (63 Texas, 504). In the charge complained of, we think the idea intended to be conveyed was this, that the duty first rested upon the plaintiff to show that the deceased was in the exercise of due care, and this being shown, the burden then rested upon the defendant to show contributory negligence. In the case of Railway v. Redecker, 67 Texas, 188, where damages were sought by a brakeman for personal injuries sustained, Judge Gaines held that the following charge was one of which the company could not complain: "Under these issues the burden of proof is upon plaintiff, and to enable him to recover, he must have shown to your satisfaction that he has been injured substantially as alleged in his petition, and that such injury was not caused by contributory negligence of plaintiff, as hereinafter charged. If this has been shown to your satisfaction, the burden of proof then shifts to defendant, and it devolves upon the defendant to show that it is not liable for damages by reason of the contributory negligence of the plaintiff, as hereinafter charged."

That the burden of proof is upon defendant to show contributory negligence is clearly settled in the able and exhaustive opinion of Judge Denman in Railway v. Sheider, 30 S. W. Rep., 904, in which all the leading authorities are fully reviewed. He says: "We are of the opinion that the great weight of authority, as well as the reason of the law, is in favor of the rule which imposes the burden of proof upon defendant to establish plaintiff's contributory negligence, and it may be considered the settled law in this State. Railway Co. v. Murphy, 46 Texas, 360; Railway Co. v. Cowser, 57 Texas, 300; Railway v. Spicker, 61 Texas, 429; Railway v. Redecker, 67 Texas, 189; Railway v. Bennett, 76 Texas, 153. It can not be denied that the opinions of this court in the cases of Walker v. Herron, 22 Texas, 55, and Railway Co. v. Crowder, 63 Texas, 503, and 76 Texas, 500, contain language showing that the learned judges delivering the same favored the reasoning of the Massachusetts and Connecticut courts, and from an examination of the opinions and briefs of counsel it appears that cases from those courts were relied upon. It does not clearly appear that the question of burden of proof was before the court in the case of Walker v. Herron, and in the Crowder case the court held that the facts were not sufficient to show defendant's negligence, and since the cases must have been disposed of upon that ground, it is probable that the question of burden of proof on the issue of con-

tributory negligence did not receive a very careful examination. This appears more probable when we consider that the learned judge who delivered the opinion in the Crowder case, 63 Texas, 503, also delivered the opinion in the Spicker case, 61 Texas, 429, and was a member of the court when the Redecker case, 76 Texas, 189, was decided, in both of which it was expressly held that the burden of proof was upon defendant; and was Chief Justice of this court when the opinion of the Commission of Appeals in the Bennett case, 76 Texas, 153, was adopted, holding the same view." If there was error in the charge complained of, it was not against appellant.

But, as the case goes back for another trial, it will not be necessary to further discuss this issue. There are many other assignments of error, some of which raise the same questions above discussed. Such as are not embraced in those above considered, are not deemed by us as well taken.

As a matter of delicacy, we regret the necessity of calling the attention of counsel for both parties to improper language in referring to each other in their briefs and arguments. The action has been characterized as "speculative and reprehensible," and the illustrations for appellee as "vulgar;" while the defense has been referred to as "pettifogging," "timid," "treacherous," and such terms as "effrontery," "covert attack," "distort the testimony," "juggling qualifications," "shuffling objections," "sharp practice," have been freely used. Such expressions find no proper place, under the rules, in assignments, propositions, counter-propositions, statements from the record, or arguments. They can not reasonably be expected to have any weight with the court or serve any useful end. We can not by silence give our tacit approval to such practice. It is clearly a violation of the rules of the court, and should not be indulged by counsel.

For the errors indicated, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Delivered June 19, 1895.